May it please the Court. The government has appealed the district court's determination that Minnesota's definition of MDMA is overbroad as compared to its federal counterpart. Federal law defines MDMA to include MDMA and its isomers, which are specified as positional, geometric, and optical. Minnesota law defines MDMA and points to two potential sources, a rule promulgated by the Board of Pharmacy as well as a codified definition. There's no question here that the rule promulgated by the Board of Pharmacy aligns precisely with federal law. It defines MDMA to include its optical, geometric, and positional isomers. At the time of the defendant's convictions, the codified definition of MDMA used the term isomers in an unadorned fashion. It did not specify which isomers of MDMA were included in its definition. The district court found that the unadorned term to isomers as used in the codified definition was unambiguous and that it unambiguously covered any and all isomers, including isomers that are not included under the federal definition. The district court's error was determining that the term isomers is unambiguous and that it refers to any and all isomers. Counsel, since your time is short, doesn't the Minnesota Board of Pharmacy, because when they did their rule, they said there's a difference between the statute and our regulation. Doesn't that take your best, what you rely on a lot, and turn it against you? No, I don't believe that the Board of Pharmacy said that the statute is different. I believe what the Board of Pharmacy... I thought they said it plainly. Go ahead and tell me. What did they say if they didn't say that plainly? That's the reason I reacted with the facial expression. At the time in 1985 when the board promulgated that rule to align with federal law... I'm talking about the 2011, I think. 2011. In 2010, the Minnesota legislature mandated the board each year to provide a report to the legislature to bring the legislation in line with federal law as well as to make any changes that would bring state law in alignment with the rule. And at that point, the board pointed out you should... The point of the 2011 legislation was to address the issue of synthetic cannabinoids. But as a housekeeping matter, they said you should also... The rule and the statute don't have the same language. They didn't say that the meanings were different. What they said is you should define MDMA or hallucinogens in the same way the rule does, and that's to specify the isomer types. We're asking the court to find that the term isomers, as used in the Minnesota statutes, is ambiguous. And I want to point out a couple of things. What creates the ambiguity? I mean, you just look it up in the dictionary and see what that means. Why is there an ambiguity? The primary reason there's ambiguity is because words have to be read in context. The Minnesota statutes require that courts consider the meaning of a word as used in their application to an existing situation. That existing situation here is drug laws. It's not organic chemistry. The Minnesota Supreme Court has also recognized that. In a case that's not cited in the brief, Wagner v. Commissioner of Revenue 505 NW 2nd 612, the Minnesota Supreme Court said we must stress the fundamental that a statute cannot be considered independently of the subject matter. The subject matter here is drug laws. Even though organic chemists may have a broad understanding of what isomers are, that doesn't necessarily translate, and we know it doesn't translate to the context of the drug laws. Counsel, what about the words, I'll get back on the mic, what about the words that say right after the words isomers, unless specifically accepted? That sounds like it's all of them unless you can find something in the statutes that specifically accepts them. So I think the phrase, you know what I'm referring to in 152.02? Yes, Your Honor. Okay, good. Well, why doesn't unless specifically accepted mean it's all of them? Because the legislature's understanding of the word isomers was based on case law. It wasn't based on the concept of organic chemistry. It was based on the defense that became known as the isomer defense, and the isomer defense related to a very specific subset of isomers, and that really frames legislature's understanding of what isomers are, which is separate and distinct from what an organic chemist might consider the word isomer to mean, and we know that from the legislative history with respect to the Controlled Substances Act. In the 1984 amendment, Congress, the Senate said in its legislative history that isomers include optical, positional, and geometric isomers. Nowhere in the legislative history are you going to see other kinds of isomers listed, constitutional, structural. Are you now talking federal legislative history? I am talking federal. You can't contradict the words of the CFR, right? Correct. I'm talking about federal legislative history. But that federal legislative history shows that the amendment, which the Board also enacted in 1985, was in response to the isomer defense. So the meaning of isomer is the meaning that was given to it in case law with respect to the isomer defense. It was not a meaning that was assigned to it by organic chemists. And we know that the legislatures and chemists were not operating from the same playbook for a number of reasons. One of those reasons is that both Congress and now Minnesota have confined the isomers to include, as I said, optical, geometric, and positional. But we also know by the declarations filed in this case by both the government and the defense that there's no such thing as geometric isomers of MDMA. A chemist would not have written a rule with a chemist's understanding of a substance to include a substance that does not even exist. We're not asking for- Counsel, if the federal government and the Minnesota government mentioned that term, did you just say a term they mentioned doesn't exist? Help me. I may not get your argument. Correct, because the legislature is not using the word in a scientific sense. They're using it in the way that defendants raised the argument in the 1970s and the 1980s. Geometric isomers of MDMA are nonexistent, but yet they're criminalized- Of MDMA, go ahead. under both federal and state law. A chemist would not have done that, and if the legislature had the same understanding of isomers as a chemist, they would not have done it either. And I want to point out that we're not asking this Court to find that the term isomers is ambiguous in the first instance. It's a matter of first impression. At least four bodies have done so already. First, in the 70s, 1970-1971, when the CSA was enacted and Minnesota's law was enacted, neither body defined isomers, and drug traffickers recognized that ambiguity and they exploited that ambiguity, and that's what became known as the isomer defense. Congress recognized the ambiguity when they enacted the amendment in 1984, specifically to address the ambiguity and to close loopholes. The DEA recognized the ambiguity when it provided its own definition of positional isomers because there is no scientifically accepted one. And finally, the Seventh Circuit in De La Torre recognized that the term isomers is ambiguous when it said that it would be a fool's errand to assign an ordinary meaning to that term. There is no ordinary meaning, it's ambiguous, and the Court should have looked to the rule to clarify the scope of that term. If Your Honors have no further questions, I will reserve the remainder of my time. Roberts. Thank you, Ms. Kirkpatrick. Mr. Richman. Hey, please, the Court. My name is Robert Richman. I represent Lorenzo Heard. This case turns on two definitions, the definition of hallucinogen and the definition of isomer. The Minnesota legislature defined hallucinogen, including MDMA, to mean a substance listed either in the drug statute or the regulations promulgated by the Board of Pharmacy, either A or B. When it did so, it did not intend that A and B be identical because a statute that says either A or A is redundant. And it didn't intend to say either A or B, but if there's a difference, go with B. That one is controlling because those are the experts. That's the government's position here. In State v. Miller, the Minnesota Court of Appeals made very clear that A and B, the statute and the regulations, stand independently of each other. And there's a good reason for that. It allows the Board of Pharmacy or the legislature to add drugs to the drug schedule to respond to designer drugs designed to evade law enforcement. And as Judge Benton pointed out, the government's position makes a melody of the 2011 amendments to the statute in which, for the first time after my client's conviction became final, for the first time made the — limited the isomers of hallucinogens that were subject to prosecution. Obviously, the legislature intended to narrow the scope of the isomers that were subject to prosecution prior to that time. Turning to the definition of isomers, the government's position depends on this court accepting the notion that the term isomer is ambiguous, but it has failed to cite any source that has so found. There is no source in the field of chemistry. There is no source in the law. The government's own experts defined isomers. The DEA defines isomers. The best that the government can do is say there is ambiguity in some of the subsets. There is difference of opinion as to what constitutes a positional isomer, for example, which is a reason why the Minnesota legislature would prohibit all isomers so as to avoid any discussion of, is this really a functional isomer or is it a positional isomer? Well, counsel, does the Federal CFR regulation penalize or forbid all isomers? It says in the final phrase, for purposes of this paragraph, the term isomer, and they use the word includes. Includes means it's part of something, not all of something. They didn't use the word means. The term isomer means the optical, positional, and geometric isomers. They said it includes it. So are you sure that the premise of your argument about, at least what I take to be the premise of your argument, about the Federal regulation is correct? The Federal definition of MDMA, both in the part of the drug statute that defines hallucinogen, limits it specifically to optical, geometric, and positional, and that dovetails with the definition of isomer. So no party has ever taken the position that use of the word includes rather than means was meant to bring in all isomers. It was meant to narrow the scope of the term isomer, which is an umbrella term which does encompass all isomers. But does the use of the word includes means isomers is ambiguous? I don't think so, Your Honor. I don't. You know what I'm referring to, the end of the CFR sentence that has includes. And the government did not make that argument, correct, in this case? It did not make that argument. So proceed with your argument. Thank you, Your Honor. The only restriction that the Minnesota legislature made to the scope of the term isomer is that it only includes isomers of hallucinogens whenever the existence of such isomers is possible within the specific chemical designation. So when the government says, well, this was an impossibility because geometric isomers don't exist, that is specifically excluded because the legislature says only if the existence of such isomers is possible within the specific chemical designation. There is no dispute here that there are functional isomers of MDMA. They exist. They are possible within the specific chemical designation. The government has provided no basis for arbitrarily excluding functional isomers from the definition of isomer in the Minnesota legislature. And, in fact, the rules of statutory construction make clear, contrary to the government's argument, that when the legislature uses a technical term, the technical definition of that term applies. So the government is basing its argument on the fact that Congress made and the DEA made a law enforcement decision to limit the isomers of certain substances that were subject to prosecution. That does not make the umbrella term ambiguous. I want to turn to the issue of realistic probability, which I think really is the only issue in this case. And we rely on Gonzales v. Wilkinson and United States v. Brown for the proposition that when a statute is overbroad on its face, the defendant doesn't have to prove that the statute means what it says by illustrating specific instances where functional isomers have been prosecuted. And the Supreme Court in the Taylor case cited in my brief recently affirmed that position. In Oliver, this court found that the Illinois drug statute was overbroad because it included positional isomers where the federal definition of, in this case, cocaine, did not. And it did not require any examples of cocaine positional isomers being prosecuted. The face of the statute was enough. Here, the face of the statute means that no legal imagination or fanciful hypotheticals are required. This court in Peh v. Garland described two schools of thought about the application of the realistic probability test and the Gonzales v. Wilkinson limitation on reasonable probability. And that case, I think, provides a good contrast to this case. That case involved an Iowa statute which made it a crime to entice a minor with the intent to commit a crime or an illegal act on that minor. And the question was, is that a crime of child abuse? And the defendant said, well, that statute is overbroad because you could entice a minor to a building to play loud music at that minor and thereby commit the crime of disorderly conduct on that minor, which this court rightfully described as far-fetched. What the Peh court stands for is when to establish overbreath requires reading the statute beyond all recognition with fanciful hypotheticals. You have to show that, in fact, the State would interpret the statute in that way and prosecute minors lured to buildings for the purposes of playing loud music. That is strikingly different from our case where the overbreath is clear from the face of the statute. The statute prohibits all isomers without ambiguity. The Federal definition doesn't. There is a mismatch plain on the face of the statute, just as in Oliver, just as in Taylor. For those reasons, Gonzalez v. Wilkinson applies. We ask the Court to affirm the decision of Judge Doty and the district court. Thank you, Your Honor. Thank you, Mr. Richman. Thank you, Your Honors. The defendant accuses the government of reading the or out of the statute. And he says that if the statutory definition of MDMA means A or A, then it's redundant. But that's precisely where we are today after the 2011 amendment. Now there's no question that the rule and the statute are the same. There is nothing in the Minnesota statutes that requires those definitions to be different. They were the same in 2009. They're the same now. And the district court should have recognized that ambiguity and deferred to the rule. The second point I wanted to make, Your Honors, was that the defendant here and the government agree that there's no dispute on the scope of the realistic probability test. If isomers is unambiguous and covers all, we are not asking this Court to apply the realistic probability test. The government has shown that the term is ambiguous. And that ambiguity can be resolved in a number of ways, including by application of the realistic probability test. Thank you, Your Honor. Thank you, Ms. Kirkpatrick. Court, thanks.